UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OKTEX UTILITY CONSTRUCTION, INC., § § § | | |
| Plaintiff, § § | | |
| v. § | CIVIL ACTION NO. 3:21-CV-2551-B | |
| § | | |
| MASTEC NORTH AMERICA, INC., § § | | |
| Defendant. § | | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant MasTec North America, Inc. ("MasTec")'s Motion to Dismiss Pursuant to the Common Law of Forum Non Conveniens (Doc. 12). For the reasons that follow, the Court **GRANTS** the motion.

I.

BACKGROUND

This dispute arises from alleged nonpayment for services performed under a contract. In 2019, "MasTec . . . hired [Plaintiff OKTEX Utility Construction, Inc. ("OKTEX")] to install fiber optic cable for a third-party project owner in Salt Lake City, Utah." Doc. 1, Compl., ¶¶ 5–6. To memorialize this agreement, the parties executed a subcontract (the "Subcontract") which included the following choice-of-law and forum-selection clause (the "FSC"):

> Choice of Law/Venue. The Parties and each of them recognize and acknowledge that Contractor operates out of, and is headquartered in Florida and approved execution of this Agreement from its offices in Florida. This agreement is governed by the laws of the State of Florida, without regard to its conflict of laws rules. Contractor and Subcontractor each hereby irrevocably agree and submit to the exclusive jurisdiction of the Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida in the

>  event any action or proceeding is commenced by either Party arising from, related to or in connection with this Agreement.

Doc. 14, Def.'s App'x, 20; Doc. 17, Pl.'s Resp., 1–2 (referencing a contract underlying MasTec's hiring of OKTEX).

Throughout its work on the project, OKTEX submitted several invoices to MasTec for work performed that it claims were never paid. Doc. 1, Compl. ¶¶ 7–8. In total, OKTEX calculates that MasTec has failed to pay for $131,952.00-worth of invoices without "provid[ing] sufficient detail or explanation as to why payment has not been made." *Id.* ¶¶ 7–14.

On October 18, 2021, OKTEX filed the instant suit against MasTec bringing claims for: (1) quantum meruit; (2) promissory estoppel; (3) suit on sworn account; and (4) common-law fraud. *Id.* ¶¶ 15–47. On November 24, 2021, MasTec filed its answer and the instant motion to dismiss pursuant to the common law of *forum non conveniens*, asserting that the Subcontract contains a mandatory forum-selection clause requiring that litigation "arising from, related to or in connection with [the Subcontract]" be conducted in "the Circuit Court, Eleventh Judicial Circuit, Miami-Dade County[, Florida.]" Doc. 13, Def.'s Br., 1; Doc. 15, Answer. The motion is fully briefed and ripe for review.

## II.

## LEGAL STANDARD

In a diversity action, a district court may employ the doctrine of *forum non conveniens* to "decline to exercise its jurisdiction and dismiss a case that is otherwise properly before it so that the case can be adjudicated in another forum." *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020). Traditionally, *forum non conveniens* provides courts with criteria to select the appropriate forum when two or more forums are available in which the defendant is amendable

to process. *See McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001). *Forum non conveniens* is also "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013).

Ordinarily, courts determine the efficacy of a *forum non conveniens* motion to dismiss by considering the same private- and public-interest factors considered in a 28 U.S.C. § 1404(a) transfer analysis. *See id.* at 60–61; *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 & n.6 (5th Cir. 2016). This analysis requires courts to "weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote the 'interest of justice.'" *Atl. Marine*, 571 U.S. at 62–63. Typically, courts give deference to the plaintiff's choice of forum and charge the moving party with the burden to demonstrate that the transferee venue is more convenient. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

"The existence of a mandatory, enforceable [forum-selection clause] dramatically alters this analysis." *Weber*, 811 F.3d at 767. "First, the plaintiff's choice of forum 'merits no weight[,]'" and the burden shifts to the plaintiff to show "that . . . [*forum non conveniens*] dismissal is unwarranted." *Id.* (quoting *Atl. Marine*, 571 U.S. at 63). Second, the Court should disregard "arguments about the parties' private interest," and "must deem the private-interest factors to weigh entirely in favor of the preselected forum."[1] *Atl. Marine*, 571 U.S. at 64. Thus, the Court's analysis is limited to consideration of the following public-interest factors: (1) the "administrative difficulties flowing from court congestion;" (2) "the local interest in having localized controversies decided at home;" (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must

---

[1] In the § 1404(a) transfer context, forum-selection clauses also alter the analysis in that "transfer of venue will not carry with it the original venue's choice-of-law rules." *See Atl. Marine*, 571 U.S. at 64. This distinction does not apply here because the FSC calls for litigation in a state court. *See id.* at 50 ("Section 1404(a) . . . governs transfer only within the federal court system."); Doc. 14, Def.'s App'x, 20.

govern the action;" (4) "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law;" and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Weber*, 811 F.3d at 776. "The factors 'will rarely defeat a transfer motion,' so 'the practical result is that [forum-selection clauses] should control except in unusual cases.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).

## III.

## ANALYSIS

MasTec seeks dismissal of OKTEX's claims pursuant to the FSC. *See* Doc. 12, Def.'s Mot., 1. In response, OKTEX argues that (1) MasTec waived or conceded its right to enforce the FSC; (2) the FSC is not valid or enforceable; (3) its claims do not fall within the scope of the FSC; and (4) the public-interest factors weigh against enforcing the FSC. Doc. 17, Pl.'s Resp., 2–3, 7–12. Below, the Court addresses each argument and, finding them without merit, concludes that the FSC requires dismissal.

*A.     MasTec Has Not Waived or Conceded Its Right to Enforce the FSC*

To begin, OKTEX appears to argue that MasTec waived the right to enforce the FSC by filing an answer wherein it "conceded that th[is] Court has jurisdiction . . . [and] that venue is proper in the Northern District of Texas." *Id.* at 3 ("Should this Court require further argument beyond MasTec's concession to jurisdiction and venue . . . ."). MasTec replies that, "[s]ince [its] motion to dismiss is not governed by the provisions of Federal Rule of Civil Procedure 12 allowing [it] to defer its answer, [it] properly responded to the suit acknowledging that this Court has jurisdiction and is a proper venue, but not necessarily the correct forum under the Subcontract[.]" Doc. 18, Def.'s Reply, 1. The Court agrees with MasTec.

MasTec's admission to jurisdiction set forth in its answer does not constitute waiver or concession of its right to enforce the FSC. Enforcement of a forum-selection clause is a matter of contract, not subject-matter jurisdiction. *See Alonzo v. Harden Home Health*, LLC, 2018 WL 6262957, at *2 (W.D. Tex. Sept. 19, 2018) ("The forum[-]selection clause, while relevant to the validity or enforceability of a contract, is not a factor in deciding whether this court has subject[-]matter jurisdiction."); *Waters v. Browning-Ferris Indus., Inc.*, 252 F.3d 796, 797 (5th Cir. 2001) ("When a district court remands a suit relying on a contractual forum[-]selection clause, that decision is not based on lack of subject[-]matter jurisdiction . . . ."). Thus, MasTec's admission that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) (diversity jurisdiction) does not run contrary to its position that the FSC requires litigation in Florida. *See* Doc. 15, Answer, ¶ 3; Doc. 1, Compl., ¶ 3.

The same is true of MasTec's venue admission. *See* Doc. 15, Answer, ¶ 4; Doc. 1, Compl., ¶ 4. As the Supreme Court has observed, "venue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause." *Atl. Marine*, 571 U.S. at 57. For this reason, "a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." *Id.* at 56. So, if a forum-selection clause cannot render venue improper in a district that falls within § 1391, it follows that conceding that venue is proper in such a district does not preclude a party for moving for dismissal or transfer pursuant to a forum-selection clause. *See id.* This is especially true here, given that MasTec's answer gives express notice of its intent to enforce the FSC. Doc. 15, Answer, ¶ 51 (mentioning the FSC under its "Affirmative Defenses" section). For these reasons, the Court finds MasTec did not waive or concede its right to seek enforcement of the FSC.

B. *The FSC is Mandatory, Valid, and Applicable to OKTEX's Claims*

Having determined that MasTec did not waive or concede its right to enforce the FSC, the Court now turns to the parties' arguments regarding the nature, validity, and applicability of the FSC.

As a threshold matter, it is important to clarify the law to be applied. In the Fifth Circuit, the enforceability of a forum-selection clause is determined by federal law and its interpretation is governed by state law. *See Weber*, 811 F.3d at 771. To decide which state's substantive law guides its analysis of interpretive issues, the Court conducts a choice-of-law analysis using Texas choice-of-law rules. *See Weber*, 811 F.3d at 770 ("A federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply.").

Here, the Subcontract provides that it "is governed by the laws of the State of Florida." Doc. 14, Def.'s App'x, 20. Therefore, the Court refers to Texas's general practice of enforcing choice-of-law provisions except where directed not to by the Restatement (Second) of Conflict of Laws. *See Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 304 (5th Cir. 2016); *Int'l Interest, L.P. v. Hardy*, 448 F.3d 303, 306–07 (5th Cir. 2006); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990). Under the Restatement, a choice-of-law provision will be enforced unless the issue in dispute "could not have been resolved by an explicit provision in the[] agreement" and either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187 (Am. Law Inst. 1971).

Neither party argues that either of these exceptions apply.[2] *See* Doc. 13, Def.'s Br.; Doc. 17, Pl.'s Resp.; Doc. 18, Def.'s Reply. Accordingly, the Court uses Florida law to analyze the three interpretive issues presented: (1) whether the FSC is mandatory; (2) whether the FSC is valid[3]; and (3) whether the FSC applies to OKTEX's claims. *See KeyCity Capital*, 2022 WL 581146, at *4 n.12 ("[S]tate law, not federal law, governs the interpretation of a [forum-selection clause]: whether it is mandatory or permissive, valid, and the claims are within the scope of the clause." (citing *Weber*, 811 F.3d at 769–70; *Fintech Fund*, 836 F. App'x at 223, 225–26)).

### 1.   The FSC is Mandatory

The Court first considers whether the FSC is mandatory or permissive, because "[o]nly mandatory clauses justify . . . dismissal." *Weber*, 811 F.3d at 768. Under Florida law, a forum-selection clause is mandatory if it provides that "suit may be filed only in the forum named in the clause." *Michaluk v. Credorax (USA), Inc.*, 164 So. 3d 719, 722 (Fla. Dist. Ct. App. 2015). Such a clause contains "words of exclusivity." *Id.* A permissive forum-selection clause, on the other hand, is "essentially a 'consent' to jurisdiction or venue in the named forum and do[es] not exclude

---

[2] Neither party briefed a choice-of-law analysis. *See* Doc. 17, Pl.'s Resp.; Doc. 18, Def.'s Reply. However, the parties seem to agree that Florida substantive law governs interpretation of the FSC. *See* Doc. 17, Pl.'s Resp., 5 ("In the present matter, and applying Texas choice-of-law rules, Florida substantive law governs interpretation of the [FSC]."); Doc. 12, Def.'s Mot., 3 ("[T]he [Subcontract] contains a clause selecting Florida Law . . . and Florida law recognizes the validity of a forum[-]selection clause."). *But see* Doc. 17, Pl.'s Resp., 12 ("The clause selects Florida law as the substantive law of the case. OKTEX's claims are presented according to Texas common law. It is not yet clear which substantive law will apply or how they may be reconciled because OKTEX does not concede it is bound by any restrictive provision which did not survive termination.").

[3] Although federal law governs a forum-selection clause's enforceability, there is authority to suggest that state law governs its validity. *See KeyCity Capital, LLC v. Davenport Invs., LLC*, 2022 WL 581146, at *4 n.11 (N.D. Tex. Feb. 25, 2022) (citing *Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 223 (5th Cir. 2020); *Granoff v. Buoyance, Inc.*, 2020 WL 7495553, at *3 n.38 (E.D. La. Dec. 21, 2020)). For this reason, the Court proceeds on the assumption that Florida law governs the FSC's validity.

jurisdiction or venue in another forum." *Id.* (quoting *Travel Exp. Inv. Inc. v. AT&T Corp.*, 14 So. 3d 1224, 1226 (Fla. Dist. Ct. App. 2009)).

MasTec asserts—and OKTEX does not appear to dispute—that the FSC is mandatory. *See* Doc. 13, Def.'s Br., 3; Doc. 17, Pl.'s Resp., 5, 7–13 (describing the difference between mandatory and permissive forum-selection clauses but not arguing that the FSC is permissive). The Court agrees. The FSC states that the parties "irrevocably agree and submit to the exclusive jurisdiction of the Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida" for adjudication of actions or proceedings falling within the scope of the clause. Doc. 14, Def.'s App'x, 20. Florida courts consistently hold that forum-selection clauses containing similar language are mandatory. *See, e.g.*, *AT&T Corp.*, 14 So. 3d at 1226–27 (finding a forum-selection clause mandatory where it contained the following language: "The parties consent to the exclusive jurisdiction of the courts located in New York City, USA"). Thus, the Court finds that the FSC is mandatory.

2. <u>The FSC is Valid Under Florida Law</u>

Next, the Court examines whether the FSC is valid under state law. OKTEX argues that enforcement of the FSC would contravene Florida public policy. *See* Doc. 17, Pl.'s Resp., 8–9. OKTEX's Response is unclear as to whether its public policy argument is intended as an attack on the FSC's validity or its enforceability. *See* Doc. 17, Pl.'s Resp., 6 (setting forth the law only as it relates to enforceability), 8 (framing its argument in terms of "viability"). For this reason, and because it does not alter the Court's ultimate disposition, the Court considers OKTEX's public policy argument as it relates to both the FSC's validity and its enforceability. *See infra* Section III(C)(2).

To the extent OKTEX's public policy argument attacks the FSC's validity, the Court is unpersuaded. OKTEX relies on Fla. Stat. §§ 685.101 and 685.102. Section 685.101(1) provides as follows:

> The parties to any contract . . . in consideration of or relating to any obligation arising out of a transaction involving in the aggregate not less than $250,000, the equivalent thereof in any foreign currency, or services or tangible or intangible property, or both, of equivalent value . . . , may, to the extent permitted under the United States Constitution, agree that [Florida law] will govern such contract . . . , the effect thereof and their rights and duties thereunder, in whole or in part, whether or not such contract . . . bears any relation to this state.

Fla. Stat. § 685.101. Section 685.102 provides Florida courts with jurisdiction over disputes arising out of contracts containing valid elections of Florida law under § 685.101. *Id.* § 685.102.

OKTEX asserts that these statutory provisions represent Florida public policy and reasons that, since the contract at issue here "does not satisfy the $250,000 requirement" of § 685.101, the FSC does not properly confer jurisdiction to a Florida state court. Doc. 17, Pl.'s Resp., 9. MasTec explains in response that §§ 685.101 and 685.102 do not evince a public policy against enforcement of forum-selection clauses and instead simply operate alongside Florida's long-arm statute to create a safe harbor for personal jurisdiction. Doc. 18, Def.'s Reply, 4–5. The Court agrees with MasTec.

OKTEX's proposition that § 685.101(1)'s requirements bear on the validity of a forum-selection clause is fundamentally flawed. By its plain language, § 685.101 has nothing to do with forum-selection clauses—it simply provides a vehicle for personal jurisdiction for certain disputes arising out of contracts containing Florida choice-of-law provisions.[4] *See* Fla. Stat. § 685.101(1). In

---

[4] Because the Court's decision to apply Florida law is driven by the Subcontract's Florida choice-of-law provision, it is worth noting that § 685.101 does not bear on the validity of choice-of-law provisions either. Section 685.101(3) expressly provides that "[§ 685.101] does not limit or deny the enforcement of any provision respecting choice of law in any other contract." Fla. Stat. § 685.101(3). Similarly, § 685.102(2) provides that "[§ 685.102] does not affect the jurisdiction of the courts of this state over any action or proceeding arising out of or relating to any other contract, agreement, or undertaking." § 685.102(2).

fact, like federal law, "Florida law presumes that forum[-]selection clauses are valid and enforceable." *Espresso Disposition Corp. 1 v. Santana Sales & Mktg. Grp., Inc.*, 105 So. 3d 592, 594 (Fla. Dist. Ct. App. 2013). Given this, the Court cannot conclude that Florida maintains a public policy against enforcement of forum-selection clauses simply because they are contained in contracts that do not automatically confer jurisdiction under §§ 685.101 and 685.102. As such, the Court finds the FSC valid under Florida law.

### 3. The FSC Applies to OKTEX's Claims

Having determined that the FSC is mandatory and valid, the Court now considers whether the FSC applies to OKTEX's claims. OKTEX makes two arguments relevant to this inquiry. First, it argues that the FSC was terminated when the Subcontract terminated. Doc. 17, Pl.'s Resp., 2–3. Second, it argues that its claims do not fall within the FSC's scope. *Id.* at 7.

#### *i.   The FSC did not terminate*

OKTEX argues that, even if the FSC was once valid, it did not survive the termination of the Subcontract because it was "specifically exclude[d] . . . [from] the list of provisions that survive expiration or termination." Doc. 17, Pl.'s Resp., 2–3.

Under Florida law,[5] forum-selection clauses are considered "structural provision[s]" that generally survive termination of the contract unless the parties agree otherwise. *See Baker v. Econ. Rsch. Servs., Inc.*, 242 So. 3d 450, 453 (Fla. Dist. Ct. App. 2018). Thus, to determine whether the

---

[5] Interpretation of a survival clause "is a matter of substantive contract law that is governed by a state's choice-of-law rules." *TSI USA, LLC v. Uber Techs., Inc.*, 2017 WL 106835, at *3 (N.D. Tex. Jan. 11, 2017) (citing *Weber*, 811 F.3d at 770), *report and recommendation adopted by* 2017 WL 3209399 (N.D. Tex. June 19, 2017). Here, since Texas choice-of-law rules point to application of Florida law, *see supra* Section III(B), the Court applies Florida law to interpret the Subcontract's survival clause.

FSC survived termination of the Subcontract, the Court looks for indicia of the parties' intent that the FSC would *not* survive the Subcontract's termination. *See id.* The Court finds none here.

The Subcontract's survival clause reads as follows:

Survival of Provisions. Without limiting the survivability of other provisions of this Agreement, Subcontractor's obligations set forth in paragraphs 1, 3, 5, 7, 9, 12, 12.1, 13, 14-19 and Schedule 1 shall survive expiration or termination of this Agreement for any reason.

Doc. 14, Def.'s App'x, 19–20.

OKTEX correctly identifies that the FSC—located in paragraph 22 of the Subcontract—is not included in the list of paragraphs covered by the survival clause. *See id.*; Doc. 17, Pl.'s Resp., 2–3. Yet OKTEX ignores the opening clause of the provision, which explains that it operates "[w]ithout limiting the survivability of other provisions[.]" Doc. 14, Def.'s App'x, 19. Thus, by its plain language, the survival clause does not evince any intent that the FSC terminate along with the Subcontract. *See Fla. Inv. Grp. 100, LLC v. Lafont*, 271 So. 3d 1, 4 (Fla. Dist. Ct. App. 2019) ("[T]he actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." (citation omitted)). Moreover, the text of the FSC supports the opposite inference. The FSC states that the parties "irrevocably agree and submit to the exclusive jurisdiction of the Circuit Court, Eleventh Judicial Circuit, Miami-Dade County, Florida in the event *any* action or proceeding is commenced . . . arising from, related to or in connection with [the Subcontract]." Doc. 14, Def.'s App'x, 20 (emphasis added). In this context, Florida courts interpret the use of the term "any" to indicate that "the forum-selection clause[] appl[ies] to *all* disputes related to the contract[], whether those disputes arose before or after termination of the contract[]." *Baker*, 242 So. 3d 450 (citing *Nolde Bros., Inc. v. Loc. No. 358, Bakery & Confectionery Workers Union*,

430 U.S. 243, 255 (1977)). Thus, viewing the survival clause and the FSC together, the Court finds that the FSC survived termination of the Subcontract.

### ii. *OKTEX's claims fall within the FSC's scope*

The FSC provides that it applies in the event "any action or proceeding is commenced by either Party arising from, related to or in connection with [the Subcontract]." Doc. 14, Def.'s App'x, 20. OKTEX argues that its claims for quantum meruit, promissory estoppel, suit on sworn account, and common-law fraud are outside the FSC's scope because "[it] could pursue [them] . . . in the complete absence of the [Subcontract]." Doc. 17, Pl.'s Resp., 7. MasTec replies that OKTEX's claims boil down to its claim for payment arising from alleged nonperformance under the Subcontract. Doc. 18, Def.'s Reply, 6.

The Court finds that OKTEX's claims fall within the FSC's scope. When, as here, a forum-selection clause provides that it applies to any claim "relat[ed] to" a contract, Florida courts determine the scope of its applicability by asking whether there is a "significant relationship and clear nexus" between the claims and the contract. *Inspired Cap., LLC v. Condé Nast*, 225 So. 3d 980, 982 (Fla. Dist. Ct. App. 2017) (quoting *Fairbanks Contracting & Remodeling, Inc. v. Hopcroft*, 169 So. 3d 282, 283 (Fla. Dist. Ct. App. 2015)).

In the present case, each of OKTEX's claims is premised on MasTec's alleged failure to pay for OKTEX's work or on MasTec's alleged fraudulent representations regarding payment. Doc. 1, Compl., ¶¶ 16–18, 22, 32–35, 41–43. And while OKTEX does not bring a claim for breach of contract, it does not dispute that its claims for payment derive from representations made and work performed under the Subcontract. *See* Doc. 17, Pl.'s Resp., 1–2. As such, the Court finds a "significant relationship and clear nexus" between OKTEX's claims and the Subcontract. *See Inspired*

*Cap.*, 169 So. 3d at 982; *Columbia Aircraft Sales, Inc. v. Piper Aircraft, Inc.*, 2020 WL 5904939, at *4 (D. Conn. Oct. 6, 2020) (applying Florida law). OKTEX cannot avoid the FSC by removing references to the Subcontract from its complaint while simultaneously alleging claims based upon the agreements and representations made in connection with the Subcontract. *See generally Oribe Hair Care, LLC v. Canales*, 2017 WL 2059582, at *4 (S.D. Fla. May 15, 2017) (applying federal law).

C.   *The FSC is Enforceable*

The Court next considers whether the FSC is enforceable. As noted above, federal law governs whether forum-selection clauses are enforceable. *Weber*, 811 F.3d at 770. The Fifth Circuit "applies a strong presumption in favor of the enforcement of mandatory [forum-selection clauses]." *Id.* at 773. "[T]he party resisting enforcement of a forum-selection clause bears a 'heavy burden of proof'" of "show[ing] that the clause is unreasonable." *PCL Civ. Constructors*, 979 F.3d at 1074 (quoting *Ginter ex rel. Ballard v. Bleacher, Prendergoast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008)). A clause is unreasonable if one or more of the following applies:

> (1) the incorporation of the forum[-]selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum[-]selection clause would contravene a strong public policy of the forum state.

*Id.* (quoting *Haynsworth v. Corporation*, 121 F.3d 956, 963 (5th Cir. 1997)).

OKTEX argues that the FSC is unreasonable because (1) the FSC was the product of fraud; and (2) enforcement of the FSC would contravene Florida public policy. Doc. 17, Pl.'s Resp., 7–9.

1.   <u>Fraud</u>

To render a forum-selection clause unenforceable on the basis of fraud, the alleged fraud "must be specific to [the] forum[-]selection clause." *Haynsworth*, 121 F.3d at 963. "Allegations that

[an] entire contract was procured as the result of fraud . . . are 'inapposite to [the] enforceability determination, which must . . . precede any analysis of the merits [of a contract's validity].'" *Afram Carriers v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998) (quoting *Haynsworth*, 121 F.3d at 964). Accordingly, "claims of fraud or overreaching must be aimed straight at the [forum-selection clause] in order to succeed." *Haynsworth*, 121 F.3d at 963.

OKTEX claims that "MasTec included a non-negotiated forum[-]selection clause in its form contract solely in an offensive manner intended to make the redress of grievances so onerous and prohibitive to its subcontractors so as to function as a denial of any would-be plaintiff's rights." Doc. 17, Pl.'s Resp., 8. According to OKTEX, MasTec never intended to pay OKTEX and the FSC is a facet of MasTec's fraudulent scheme. *Id.* at 7–8. But alleging that a forum-selection clause is an instrumentality effectuating fraud is different than alleging that the clause is itself a product of fraud. *See Haynsworth*, 121 F.3d at 963 ("[A] forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion."). The closest OKTEX comes to alleging the latter is through a complaint that the FSC's placement and formatting within the contract rendered the clause inconspicuous, *see* Doc. 17, Pl.'s Resp., 8; however, a review of the contract reveals that the FSC was set off under an underlined section header labeled "Choice of Law/Venue" and was in the same typeface and font as the rest of the contract, save two sections set forth in capital letters. *See* Doc. 14, Def.'s App'x, 3–22. Absent something more, the Court finds that OKTEX has failed to show that the FSC is unenforceable as a product of fraud. *See Brister v. ACBL River Operations LLC*, 2018 WL 746390 (E.D. La. Feb. 7, 2018) (finding a forum-selection clause was not unreasonable where "[t]he paragraph that include[d] the forum[-] selection clause [was] in the

same font and text size as the rest of the form"); *see also CDx Holdings, Inc. v. Goldenson*, 2012 WL 13018985, at *8 (N.D. Tex. Oct. 26, 2012) (same).

    2.    <u>Violation of Public Policy</u>

As explained *supra* Section III(B)(2), OKTEX's Response could be read as challenging the FSC's enforceability on the basis of Florida public policy. To the extent it does so, its argument fails for the same reasons already discussed by the Court. *See supra* Section III(B)(2). But in the enforceability context, OKTEX's Florida public policy argument suffers from a more fundamental defect: it misapplies federal law. The federal test for unreasonableness is focused on avoiding contravention of "strong public policy of the *forum state*"—not the forum provided for in the forum-selection clause. *See Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 542–43 (5th Cir. 2018) (evaluating whether a forum-selection clause providing for litigation in New York violated the public policy of Louisiana, where the district court was based) (emphasis added); *Haynsworth*, 121 F.3d at 959–60, 966 (finding that enforcement of a forum-selection clause providing for litigation in England would not contravene Texas public policy); *Wright v. Nexus RV, LLC*, 2020 WL 3440583, at *3 (N.D. Tex. June 23, 2020) (noting that the plaintiffs failed to show that enforcement of a forum-selection clause providing for litigation in Indiana would contravene Texas public policy). This is true even where the agreement at issue contains a valid choice-of-law provision adopting the law of the state selected by the forum-selection clause. *See Barnett*, 831 F.3d at 308 (holding that a choice-of-law provision selecting Kuwait law did not violate Texas public policy and that, "[f]or the same reasons, if federal law alone controls, [the plaintiff] . . . failed to show that enforcement of the forum-selection clause [was] unreasonable because it would contravene a strong forum-state policy"). Here, the forum state is Texas, not Florida. Thus, because OKTEX does not point to any Texas

public policy that would be contravened by enforcement of the FSC, the Court concludes that the FSC is enforceable under federal law.

D.   *There are No Extraordinary Circumstances That Warrant Disregarding the FSC*

Having determined that the FSC is mandatory, valid, applicable, and enforceable, the Court now considers whether this is an "unusual case[]" presenting "extraordinary circumstances" warranting nonenforcement of the a forum-selection clause. *See Atl. Marine*, 571 U.S. at 62, 64. To do so, the Court analyzes the four public-interest factors briefed by the parties. *See* Doc. 17, Pl.'s Resp., 9–12. Doc. 18, Def.'s Reply, 8.

1.   Court Congestion

The court congestion factor is neutral. While MasTec does not address this factor, *see* Doc. 13, Def.'s Br., 4, OKTEX argues that "it is common that state courts see prolonged delays and inconsistent closures in light of the ongoing COVID-19 situation" such that the uniformity, accessibility, and consistency of process offered by the federal court system "provides a better likelihood that this matter can proceed through the litigation process in an efficient and effective manner." Doc. 17, Pl.'s Resp., 10. However, OKTEX concedes that "[t]here is no specific available evidence that would indicate that the Eleventh Judicial Circuit Court of Florida is particularly overwhelmed and that delay of pending matters is likely." *Id.* While the Court recognizes the effect that the COVID-19 pandemic has had on federal and state courts at large, OKTEX's argument lacks specificity and is too speculative to push this factor in its favor. *See Signature Fin., LLC v. McClung*, 2016 WL 8259335, at *9 (W.D. Tex. May 3, 2016), *report & recommendation adopted by* 2016 WL 8259100 (W.D. Tex. May 23, 2016). Accordingly, the Court concludes this factor is neutral.

### 2. Localized Interests

The localized-interests factor is neutral. MasTec appears to argue that this factor weighs neutrally because "the events forming the basis of the Original Complaint took place in Salt Lake City, U[tah]." Doc. 13, Def.'s Br., 4. OKTEX does not dispute this, but contends that this factor favors Texas because "all communications relevant to the direction of the work, submission of invoices for completion of the work, demand for payment by O[ktex], and refusals to tender payment due by MasTec all took place in Texas." Doc. 17, Pl.'s Resp., 11.

The localized-interests factor "generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co., L.P. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008). This case concerns a dispute between MasTec, a Florida entity, and OKTEX, a Texas entity, related to a project taking place in Utah. Thus, Florida, Texas, and Utah all have some interest in this case. Because both Florida and Texas maintain an interest in deciding this case at home, the Court finds this factor is neutral. *See J.V. & Sons Trucking v. Asset Vision Logistics*, 2020 WL 10458645, at *7 (N.D. Tex. Dec. 15, 2020).

### 3. Familiarity with the Law

The familiarity-with-the-law factor weighs slightly in favor of retaining the case. Generally, Florida state courts are more familiar with applying Florida law than this Court, and this Court is more familiar applying non-Florida law than Florida state courts. *See Just Indus. Servs. LLC v. Ceda Specialty Servs. LP*, 2019 WL 11254355, at *5 (S.D. Tex. Feb. 8, 2019); *AMS Staff Leasing v. Starving Students, Inc.*, 2003 WL 21436476, at *3 (N.D. Tex. June 18, 2003) (noting that federal courts are "experienced in applying the law of other jurisdictions"). OKTEX presents its claims under Texas common law. *See* Doc. 1, Compl. Yet, the Subcontract provides that it "is governed by the laws of

the State of Florida, without regard to its conflict[-]of[-]laws rules." Doc. 14, Def.'s App'x, 20. OKTEX argues that "[i]t is not yet clear . . . which substantive law will apply . . . because OKTEX does not concede it is bound by any restrictive provision which did not survive termination." Doc. 17, Pl.'s Resp., 12.

The Court finds OKTEX's briefing insufficient to find this factor weighs squarely against dismissal. As discussed *supra* Section III(B)(3)(a), the Court rejects OKTEX's position that the FSC (which contains the Florida choice-of-law provision) terminated with the Subcontract. Accordingly, a reviewing court would have to determine whether OKTEX's claims are governed by Florida law, the law of another state (presumably Texas or Utah), or perhaps both. The first step of this inquiry requires determining whether, under Florida law, OKTEX's claims fall within the scope of the parties' choice-of-law agreement.[6] Thus, Florida law is the only state law the Court can be certain will apply to this case. And while the Court recognizes the risk that non-Florida law could apply to some or all of OKTEX's claims, it is hesitant to find this factor weighs strongly in favor of retaining this case given OKTEX's failure to provide a detailed explanation for why non-Florida law would apply. *See* Doc. 17, Pl.'s Resp., 12; *cf. Just Indus. Servs.*, 2019 WL 11254355, at *5 (finding this factor neutral where the law to govern the case was undecided). Accordingly, the Court finds this factor at best weighs slightly in favor of retaining this case.

---

[6] To be clear, this question is not answered by the Court's earlier determination that OKTEX's quasi-contractual and fraud claims are related to or in connection with the Subcontract. That determination is based upon the Court's finding that, under Florida law, OKTEX's claims are among those required to be litigated in Florida by the FSC. Whether Florida law governs the substance of the claims is analytically distinct.

### 4. Avoidance of Unnecessary Conflict of Laws

The avoidance-of-unnecessary-conflict-of-laws factor is neutral. OKTEX asserts that "in the event that such a factor becomes relevant, . . . the [f]ederal forum . . . stands as the most appropriate and experienced arbiter to resolve any potential issues." Doc. 17, Pl.'s Resp., 12. However, because neither party identifies any conflict-of-laws issues that would arise from litigating this case in Florida, the Court finds this factor is neutral.

In sum, the Court deems the private-interest factors to wholly support dismissal, *see Atl. Marine*, 571 U.S. at 64, and finds that three public-interest factors are neutral and one weighs slightly in favor of retaining the case. Having analyzed the factors, the Court concludes that OKTEX has failed to carry its heavy burden to demonstrate why this is an "exceptional case" such that it should not be required to litigate in the forum to which it agreed. *Atl. Marine*, 571 U.S. at 64.

## IV.

## CONCLUSION

For the reasons stated above, the Court finds that the FSC requires OKTEX to pursue its claims in the Circuit Court of the Eleventh Juridical Circuit, Miami-Dade County, Florida. Accordingly, the Court **GRANTS** MasTec's Motion to Dismiss Pursuant to the Common Law of Forum Non Conveniens (Doc. 12) and **DISMISSES** OKTEX's claims **WITHOUT PREJUDICE**.

**SO ORDERED**.

**SIGNED: March 15, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE